92 F.3d 814
 35 Fed.R.Serv.3d 897, 39 U.S.P.Q.2d 1705,
96 Cal. Daily Op. Serv. 5814,
96 Daily Journal D.A.R. 9516
 The COMMITTEE FOR IDAHO'S HIGH DESERT, INC., Plaintiff-Appellee,
v.
Jim YOST, individually and dba Committee for Idaho's High
Desert, Inc.; Ted Hoffman, individually and dba Committee
for Idaho's High Desert, Inc.; Quey Johns, individually and
dba Committee for Idaho's High Desert, Inc., Defendants-Appellants.
The COMMITTEE FOR IDAHO'S HIGH DESERT, INC., Plaintiff-Appellant,
v.
Jim YOST, individually and dba Committee for Idaho's High
Desert, Inc.; Ted Hoffman, individually and dba Committee
for Idaho's High Desert, Inc.; Quey Johns, individually and
dba Committee for Idaho's High Desert, Inc., Defendants-Appellees.
 Nos. 95-35439, 95-35472.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 6, 1996.
Decided Aug. 6, 1996.
 
 Laird J. Lucas, Land & Water Fund of the Rockies, Boise, Idaho, for the plaintiff-appellee-appellant.
 Gary D. Babbitt, Hawley, Troxell, Ennis & Hawley, Boise, Idaho, for the defendants-appellants-appellees.
 Appeals from the United States District Court for the District of Idaho Larry M. Boyle, Magistrate Judge, Presiding; Nos. CV-94-00089-LMB, CV-94-00089-LMB.
 Before: FLETCHER, NOONAN, and RYMER, Circuit Judges.
 FLETCHER, Circuit Judge:
 
 
 1
 James Yost, Ted Hoffman, Quey Johns, and their corporation Committee for Idaho's High Desert, Inc. (hereinafter "appellants") appeal from the district court's decision, published at 881 F.Supp. 1457, finding that they violated § 43(a) of the Lanham Act, 15 U.S.C. §§ 1051-1128, by infringing appellee's protected tradename "Committee for Idaho's High Desert" and enjoining them from using that name.[1] The Committee for Idaho's High Desert, Inc. (CIHD, pronounced "kid") cross-appeals from the district court's grant of summary judgment dismissing its damages claim and its claims against the individual appellants, as well as from the court's order denying an extension of time in which to file a motion for attorney's fees. We have jurisdiction over this timely appeal under 28 U.S.C. § 1291.
 
 FACTUAL BACKGROUND[2]
 
 2
 CIHD is a non-profit environmental education and advocacy organization, concerned with issues of grazing, range-land reform, water use, recreation, endangered species, and resource use affecting the desert of southwest Idaho and parts of Nevada, Oregon, and Utah. CIHD's position on these issues is "to encourage limited use of public lands with an emphasis on conservation and preservation of the natural state of the desert ecosystem". 881 F.Supp. at 1463.
 
 
 3
 CIHD was organized in the late 1970s by a number of individuals. In 1981, the organization incorporated under Idaho law. Throughout its history, the organization has operated very informally, "due to the voluntary, changing, and diverse nature of its membership". Id. at 1464. In 1985, CIHD failed to file a required annual report with the Idaho secretary of state and forfeited its corporate charter. The organization's leaders and members were unaware of this forfeiture and continued to operate as if CIHD were a corporation in good standing.
 
 
 4
 In 1992, CIHD and the Idaho Conservation League sued the federal government to have the Bruneau snail, which lives in the Idaho desert, listed as an endangered species; as a result of the suit, the snail was listed in January 1993. A coalition of agriculture and cattle organizations called the Bruneau Valley Coalition then sued to have the snail de-listed. See Idaho Farm Bureau Federation v. Babbitt, 839 F.Supp. 739 (D.Idaho 1993), vacated and remanded, 58 F.3d 1392 (9th Cir.1995). James Yost was, at the time, the director of public affairs at the Idaho Farm Bureau; Ted Hoffman was president of the Owyhee Cattlemen's Association; and Quey Johns was president of the Owyhee Farm Bureau. All three organizations, which were members of the Bruneau Valley Coalition, had opposed CIHD's positions on the use of public lands. The individual appellants' viewpoints on these issues are "virtually antithetical" to those of CIHD. 881 F.Supp. at 1466. In 1993, Hoffman, in a letter to the editor, accused CIHD's long-time chairman, Randy Morris, of using "enviro-nazi tactics" and "environmentalist flim-flam". Id.
 
 
 5
 After CIHD and others moved in September 1993 to intervene in the de-listing suit in order to defend the listing, Yost had a colleague check with the Idaho secretary of state to determine whether the prospective intervenors were corporations in good standing. Within 24 hours of learning that CIHD had forfeited its charter in 1985, the individual appellants formed a new Idaho corporation under the name "Committee for Idaho's High Desert, Inc." (hereinafter "appellant corporation"). The individual appellants had been considering forming an organization to advance their views on environmental issues for several years and had discussed possible names, but took no action until they learned of CIHD's corporate forfeiture and did not seriously consider using the name "Committee for Idaho's High Desert" until they learned of the forfeited charter. The appellant corporation's articles of incorporation were modeled after CIHD's, and the statement of purposes was copied virtually verbatim from CIHD's, with "a few minor, subtle changes where necessary to represent what are distinct differences between [the appellants'] and [CIHD's] environmental philosophies". Id. at 1467. The appellant corporation was capitalized with only $120. Yost, Hoffman, and Johns are the appellant corporation's officers, directors, and only members, and the appellant corporation's articles listed its principal place of business as the Boise office of the Idaho Farm Bureau.
 
 
 6
 CIHD learned of its earlier inadvertent forfeiture when the Bruneau Valley Coalition opposed CIHD's intervention in the de-listing suit on the basis of incapacity. When CIHD promptly sought to be reinstated, however, the secretary of state denied reinstatement because the appellant corporation was already registered under the name "Committee for Idaho's High Desert".
 
 
 7
 In January 1994, Hoffman testified at a public hearing held by the U.S. Air Force on a proposal for a training range on public land in Idaho. "Hoffman stated that he was president of the Committee for Idaho's High Desert which was supportive of the proposal, a position he knew to be diametrically and publicly opposed by [CIHD]." 881 F.Supp. at 1467. At trial, Hoffman "acknowledged that he made this statement to add to his credibility as an environmentalist to support the training range proposal". Id.
 
 PROCEEDINGS BELOW
 
 8
 On March 1, 1994, CIHD filed a complaint against Yost, Hoffman, Johns, and their corporation, alleging inter alia violations of federal and state trademark and unfair competition law. After the filing of an amended complaint, the parties consented to have the case assigned to a magistrate judge under 28 U.S.C. § 636(c).
 
 
 9
 After appellants moved for summary judgment, the district court dismissed CIHD's state-law claims, finding that as a forfeited corporation it could bring those claims only through its statutory trustees. The court refused to dismiss CIHD's federal claims, ruling that any corporate disability under state law did not preclude CIHD from suing in federal court to vindicate rights under federal trademark and unfair competition laws. The court also found that CIHD had not created a genuine issue of material fact as to the dollar amount of any damages sustained, so it dismissed CIHD's damage claims and struck CIHD's request for a jury trial. The court then ruled that since it had dismissed all damage claims, and since the individual appellants, as officers of the appellant corporation, would be bound under Federal Rule of Civil Procedure 65(b) by an injunction against the corporation, the individual appellants were entitled to summary judgment and to dismissal of the action as against them.
 
 
 10
 In January 1995, a four-day bench trial was held. The district court made findings as to the nature of CIHD's goods and services, its continuous and exclusive use of its tradename in connection with those goods and services from at least 1980 until the appellant corporation's incorporation in 1993, and the association by relevant "consumers" of the name with appellee CIHD. The court found that the relevant "consumers" of the services of CIHD and appellant corporation were similar, that some of those consumers had actually been confused by appellants' use of the name, and that the appellants "knowingly, intentionally and deliberately adopted and used [the CIHD name] in order to cause confusion, obstruct [CIHD's] pursuit of its environmental agenda, and thereby to obtain an advantage in the snail de-listing litigation by preventing [CIHD's] intervention". 881 F.Supp. at 1468.
 
 
 11
 The district court then concluded that CIHD had capacity to bring its suit as an unincorporated association under Rule 17(b)(1) of the Federal Rules of Civil Procedure and that § 43(a) of the Lanham Act allowed suits for infringement of an unregistered trademark or tradename. After setting forth the relevant standards for trademark and tradename protection, the court ruled that the tradename "Committee for Idaho's High Desert" was neither merely geographically descriptive nor arbitrary. It concluded instead that the name was suggestive, and therefore inherently distinctive and entitled to protection without a showing of secondary meaning. Recognizing, however, the difficulty in drawing the line between suggestive and descriptive marks, the court went on to conclude that, even if the name was only descriptive, CIHD had demonstrated that the name had acquired secondary meaning. Finally, the court concluded that the evidence clearly established a likelihood of confusion as a result of appellants' use of CIHD's name and that appellants had thus infringed CIHD's tradename. Therefore, the court enjoined appellant corporation, and "its officers, directors, agents, attorneys, employees" , from using the name "Committee for Idaho High Desert" or any name confusingly similar to it and from maintaining a corporate registration using that name.
 
 DISCUSSION
 No. 95-35439
 I. Legal Nature of CIHD
 
 12
 Appellants argue that the district court erred in finding that CIHD was an "unincorporated and non-profit association". Factual findings are reviewed for clear error, so a reviewing court must accept a finding unless it "is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). The district court did not make the finding appellants seek to challenge. It found only that CIHD "is a non-profit environmentalist membership organization" and that it has operated "as a non-profit environmental membership organization under the name 'Committee for Idaho's High Desert' " since its organization in the late 1970s. 881 F.Supp. at 1463. It also found that CIHD incorporated in 1981, forfeited its corporate charter in 1985 for failure to file an annual report, and thereafter "operated under the mistaken assumption that it was a corporation in good standing" until it first learned of its forfeiture when the appellants attempted to prevent CIHD's intervention in the de-listing lawsuit. Id. at 1464. Those findings are not clearly erroneous.
 
 
 13
 Appellants also challenge the finding that CIHD "organized and began conducting business as a non-profit environmental membership organization under the name 'Committee for Idaho's High Desert' as early as the late 1970s ... and has conducted such activity and business continuously until the time of trial." Id. at 1463. This finding is also not clearly erroneous. The record contains a copy of CIHD's Articles of Incorporation dated July 1981, as well as a certificate of incorporation dated July 15, 1981. The record also contains copies of minutes of meetings of CIHD's board of directors from September 1981 to June 1994, and these minutes contain extensive detail as to the organization's activities during those years. Copies of CIHD newsletters published between 1982 and 1994 were admitted into evidence. In addition, Randy Morris, long-time chairman of CIHD, and Pamela Marcum, a past officer and active member of CIHD, both testified about the nature of the organization, its operations, purposes, activities, and membership.
 
 
 14
 In challenging this finding, the appellants repeatedly attack the lack of evidentiary support for the founding or operation of an "unincorporated association". The district court, however, made no factual finding that CIHD was an "unincorporated association". It found only that CIHD was, at all times since its founding, "a non-profit environmentalist membership organization". As noted, this finding was not clearly erroneous. The court did then conclude as a matter of law that CIHD was an "unincorporated association" with the capacity to sue in its common name under Federal Rule of Civil Procedure 17(b). 881 F.Supp. at 1469. If appellants' brief can be read to challenge this conclusion of law,[3] the challenge fails. Rule 17(b)(1) allows an "unincorporated association" to sue in federal court, regardless of its capacity to sue under the law of the state in which the court sits, when the association is suing "for the purpose of enforcing ... a substantive right existing under the ... laws of the United States". Fed.R.Civ.P. 17(b)(1). See, e.g., Sierra Association for Environment v. Federal Energy Regulatory Commission, 744 F.2d 661, 662 (9th Cir.1984) ("[B]ecause this action arises under federal law, [plaintiff] had capacity to sue as an unincorporated association, Fed.R.Civ.P. 17(b)(1), and any incapacity under California law is accordingly irrelevant."). For purposes of Rule 17(b)(1), the determination of what constitutes an "unincorporated association" is a question of federal law. Associated Students of the University of California at Riverside v. Kleindienst, 60 F.R.D. 65, 67 (C.D.Cal.1973) (citing cases). Courts have generally defined an "unincorporated association" as "a voluntary group of persons, without a charter, formed by mutual consent for the purpose of promoting a common objective". Local 4076, United Steelworkers v. United Steelworkers, 327 F.Supp. 1400, 1403 (W.D.Pa.1971). CIHD, in the period after the forfeiture of its corporate charter, clearly meets this definition.
 
 
 15
 Appellants' contention that the district court somehow erred in allowing Morris and Marcum to testify "as if they were officers of an association" is unavailing. Those witnesses testified that they believed at all times, until appellants moved to bar CIHD's intervention in the snail litigation, that CIHD was a corporation. After learning of the forfeiture and being unable to reinstate the corporation, the organization continued to act as what can only be described as an unincorporated association under the definition noted above. The district court did not err in allowing Morris and Marcum to testify.
 
 II. First Use and Ownership
 
 16
 Appellants next argue that CIHD never established that it was the first user of the name "Committee for Idaho's High Desert", pointing to Randy Morris' testimony at trial that some people used the name as early as 1978, three years before CIHD was incorporated; the testimony suggests that Bruce Boccard, one of CIHD's incorporators and initial directors, was using the name in the pre-incorporation period. Appellants argue that CIHD produced no evidence of CIHD's acquisition of the tradename from the first user.
 
 
 17
 The lack of evidence as to CIHD's acquisition of tradename rights from the first user is irrelevant. Appellants do not challenge the district court's finding that CIHD's "continuous use" of the name in connection with its business "has been exclusive since at least 1980, until [appellants] incorporated under that name on September 14, 1993". 881 F.Supp. at 1466 (emphasis added). As a practical matter, CIHD appears to be the direct and immediate successor of any individuals who used the name between 1978 and 1981. It also seems likely that anyone who used the name before CIHD did has long since legally abandoned the name, since CIHD's use was exclusive between 1980 and 1993. See 15 U.S.C. § 1127 ("A mark shall be deemed to be 'abandoned' ... [w]hen its use has been discontinued with intent not to resume such use.... Nonuse for 3 consecutive years shall be prima facie evidence of abandonment."); J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 17.03 (3d ed.) (hereinafter McCarthy ).
 
 
 18
 Most importantly, however, a third party's prior use of a trademark is not a defense in an infringement action. A number of cases from the 1920s so hold, including Ward Baking Co. v. Potter-Wrightington, Inc., in which the court wrote that "even if, for some purposes and in some territory, [a third party] may have a right in the trade-mark superior to that of the plaintiff, the defendant is not thereby exonerated from responsibility for an attempt to appropriate to itself a good will created by the plaintiff during a long course of business." 298 F. 398, 402 (1st Cir.1924). See also Del Monte Special Food Co. v. California Packing Corp., 34 F.2d 774, 777 (9th Cir.1929) (holding in unfair competition case that "whatever may be the respective rights of the appellee and ... other users of the name 'Del Monte,' such use does not justify the appellant in its more recent use of appellee's well-known mark upon a new and different product recently produced by it"). This rule is nothing more than the application to the field of trademarks of the familiar real-property doctrine that "[p]ossession is title against all the world but the true owner". McCarthy, § 31.39. Modern trial courts have adhered to this rule--see Specialty Measurements, Inc. v. Measurement Systems, Inc., 763 F.Supp. 91, 95 (D.N.J.1991); Bambu Sales, Inc. v. Sultana Crackers, Inc., 683 F.Supp. 899, 909-10 (E.D.N.Y.1988); Marshak v. Sheppard, 666 F.Supp. 590, 599 (S.D.N.Y.1987); Eagle Snacks, Inc. v. Nabisco Brands, Inc., 625 F.Supp. 571, 578-79 (D.N.J.1985)--and a prominent commentator in the field supports it. McCarthy, § 31.39 ("[A third-party's rights] should not be allowed as a defense in any trademark case. So long as plaintiff proves rights superior to defendant, that is enough. Defendant is no less an infringer because it is brought to account by a plaintiff whose rights may or may not be superior to the whole world. The plaintiff's speculative dispute with a third party does not concern the defendant."). In accordance with this rule, the question of whether some individuals used the name "Committee for Idaho's High Desert" prior to CIHD is no defense for appellants given CIHD's continuous and exclusive use of the name for at least 12 years before appellants' use, and the trial court did not err in failing to find that CIHD either was the first user of the name or had acquired ownership from some other first user.
 
 III. Genericness
 
 19
 Genericness is a question of fact, In re Northland Aluminum Products, Inc., 777 F.2d 1556, 1559 (Fed.Cir.1985), and therefore subject to clear-error review, In re Merrill Lynch, Pierce, Fenner & Smith, Inc., 828 F.2d 1567, 1569 (Fed.Cir.1987). See also A.J. Canfield Co. v. Honickman, 808 F.2d 291, 307 n. 24 (3d Cir.1986).
 
 
 20
 The district court made no express findings of fact or conclusions of law as to the genericness of the tradename CIHD. Its finding that the name is not generic is instead implicit in its finding that the phrase "Idaho high desert" is geographically descriptive, in its finding that relevant consumers associate the name "Committee for Idaho's High Desert" with the appellee and not merely with its goods and services, in its conclusion that the name taken as a whole is not primarily geographically descriptive, and in its conclusions that the name is a suggestive one or, in the alternative, a descriptive one that has acquired secondary meaning.
 
 
 21
 Appellants argue that the phrase "Idaho's high desert" and the word "committee" are both generic. The district court was clearly correct in evaluating the genericness of the name as a whole, rather than looking to its constituent parts individually. See, e.g., California Cooler, Inc. v. Loretto Winery, Ltd., 774 F.2d 1451, 1455 (9th Cir.1985) ("[Plaintiff's] mark is a composite term, and its validity is not judged by an examination of its parts. Rather, the validity of a trademark is to be determined by viewing the trademark as a whole."); Bank of Texas v. Commerce Southwest, Inc., 741 F.2d 785, 787 (5th Cir.1984) (finding name "Bank of Texas", which "combines the generic term 'bank' with the geographical term 'Texas' ", to be descriptive rather than generic). The relevant question therefore is whether the entire name "Committee for Idaho's High Desert" is generic.
 
 
 22
 "A generic term is one that refers to the genus of which the particular product is a species." Park 'N Fly, Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189, 194, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985). The Lanham Act sets out the test for genericness: "The primary significance of the ... mark to the relevant public ... shall be the test for determining whether the ... mark has become the generic name of goods or services on or in connection with which it has been used." 15 U.S.C. § 1064(3). The Federal Circuit has interpreted this statement as codifying "the time-honored test for genericness articulated by Judge Learned Hand ...: 'What do the buyers understand by the word for whose use the parties are contending?' ". Magic Wand, Inc. v. RDB, Inc., 940 F.2d 638, 640 (Fed.Cir.1991).
 
 
 23
 By these standards, the district court's determination that the name "Committee for Idaho's High Desert" is not generic is not clearly erroneous. The district court identified the relevant public: CIHD's "members and potential members, public officials and agencies involved in making policy decisions on [public] lands, conservationist groups and individuals, and other members of the interested public". 881 F.Supp. at 1465. It also identified the services and goods provided by CIHD, in connection with which it has used its tradename. These services include primarily dissemination of information on environmental issues through a variety of channels, advocacy of a conservationist agenda on its members' behalf, and education of the public about the desert, id.; the goods include primarily newsletters, bandanas, t-shirts, and bumper stickers, id.. The district court's implicit finding that the name "Committee for Idaho's High Desert" is not the generic name for these goods and services, or for their producer, is not clearly erroneous. It is not at all "difficult to imagine another term of reasonable conciseness and clarity by which the public [could] refer[ ]" to these goods and services and their producer. Blinded Veterans Association v. Blinded American Veterans Foundation, 872 F.2d 1035, 1041 (D.C.Cir.1989). The name for the genus to which these particular services belong would probably be "environmental education and advocacy", and the generic names for the goods are those actually used by the court to describe them ("newsletter", "bandana", "t-shirt", "bumper sticker"). The name for a supplier of these services and goods might well be "environmental advocacy organization". The district court's implicit finding that the tradename "Committee for Idaho's High Desert" is not generic is not clearly erroneous.
 
 IV. Secondary Meaning
 
 24
 A trial court's finding of secondary meaning may be reversed only upon a showing of clear error. Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1355 (9th Cir.1985) (en banc). "Factors considered in determining whether a secondary meaning has been achieved include: (1) whether actual purchase[r]s of the product bearing the claimed trademark associate the trademark with the producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark, and (4) whether use of the claimed trademark has been exclusive." Id. at 1358 (quoting Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1015 (9th Cir.), cert. denied, 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986)).
 
 
 25
 The district court clearly identified "the relevant 'consumer' group" as CIHD's "members and potential members, public officials and agencies involved in making policy decisions on [the] lands [in question], conservationist groups and individuals, and other members of the interested public". 881 F.Supp. at 1465. The court's finding that this group associates the name "Committee for Idaho's High Desert" with appellee CIHD, and not merely with its goods and services, is not clearly erroneous. A reporter on environmental issues, a former state senator and environmentalist, a political science professor specializing in environmental politics, and a fifteen-year Bureau of Land Management employee all testified as to their association of the name "Committee for Idaho's High Desert" with appellee CIHD.
 
 
 26
 The district court found that CIHD "has conducted a significant amount of advertising of its name and business activities through public television, radio, newsletters, public hearings, and various meetings, lectures, hikes, school presentations and slide shows". 881 F.Supp. at 1465-66. While appellants appear to be correct in stating that the district court had no evidence of advertising budgets or expenses, appellants' assertion that "[e]vidence of advertising was limited to one conference in 1985 and one public to contract [sic]" is incorrect. While the type of "advertising" identified by the district court would be unusual in a trademark dispute involving competing for-profit businesses, it is not inappropriate in a dispute between two non-profit advocacy groups, and the evidence in the record amply demonstrates that the finding of "significant" advertising is not clearly erroneous.
 
 
 27
 The trial court's findings on the length, manner, and exclusivity of CIHD's use of the trademark are also not clearly erroneous.
 
 
 28
 Appellants are correct that no survey evidence was before the district court and that this court has noted that "[a]n expert survey of purchasers can provide the most persuasive evidence of secondary meaning". Vision Sports, Inc. v. Melville Corp., 888 F.2d 609, 615 (9th Cir.1989). It is clear from this very statement, however, that survey evidence is only one of the most persuasive ways to prove secondary meaning, and not a requirement for such proof.
 
 
 29
 Finally, the lower court's finding that the appellants "knowingly, intentionally and deliberately adopted and used" the CIHD name offers strong support for the finding of secondary meaning. "Proof of exact copying, without any opposing proof, can be sufficient to establish a secondary meaning." Transgo, 768 F.2d at 1016.
 
 
 30
 The district court's finding that the name "Committee for Idaho's High Desert" had acquired secondary meaning is thus not clearly erroneous.
 
 No. 95-35472 (CIHD's Cross Appeal)
 I. Summary Judgment
 
 31
 CIHD cross-appeals from the district court's partial summary judgment dismissing its claim for damages and dismissing its federal claims against the individual appellants. The grant of summary judgment is reviewed de novo. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).
 
 A. Damages
 
 32
 The court granted summary judgment to appellants on CIHD's claims for monetary recovery, ruling that CIHD had not established any genuine issue of material fact as to monetary damage.
 
 
 33
 The Lanham Act allows a plaintiff who establishes a violation of § 43(a) of that act "to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action". 15 U.S.C. § 1117(a). In opposing appellants' motion for summary judgment, CIHD offered no evidence to dispute appellants' claim that they had earned no profits. As to damages, CIHD conceded that it was not seeking "lost revenues from declining membership or contributions that [might] have been made to CIHD". The only evidence of damages pointed to by CIHD in opposition to summary judgment was evidence of "the amount of hours that representatives of [CIHD] have had to spend on this lawsuit, valued at some reasonable hourly rate". CIHD's attorney explained that to prove damages, his intention was "to put on each of these guys to say I spent 20, 50, or whatever hours on this case, here's what I did, I met with the lawyers, I had to locate documents, I had to do this, that, and the other" (emphasis added). It is therefore clear that the amounts CIHD was alleging as damages were simply costs of litigation. No authority suggests that a plaintiff's time spent in litigation over trademark infringement is compensable as damages for the infringement. The district court was therefore correct in granting summary judgment to the appellants' on CIHD's claim for damages.
 
 B. Dismissal of Individual Appellants
 
 34
 Section 43(a) of the Lanham Act imposes liability on "[a]ny person who, on or in connection with any goods or services ... uses in commerce any ... name ... which ... is likely to cause confusion". 15 U.S.C. § 1125(a). The district court found after trial that Yost, Hoffman and Johns "knowingly, intentionally and deliberately adopted and used [appellee's] name ... in order to cause confusion, obstruct [appellee's] pursuit of its environmental agenda, and thereby to obtain an advantage in the snail de-listing litigation by preventing [appellee's] intervention therein". 881 F.Supp. at 1468. The acts that the individual appellants performed included the formation of the appellant corporation under the name "Committee for Idaho's High Desert, Inc.", id. at 1464, 1466, and Hoffman's testimony--under the title of president of CIHD, with the intent "to add to his credibility as an environmentalist"--at a U.S. Air Force hearing in favor of an air force training range in southern Idaho, id. at 1467. Sufficient evidence of these acts was available at the summary judgment stage to create genuine issues of fact, and these acts would be sufficient to render the individual appellants liable under § 43(a) for using in commerce, in connection with services, a name which is likely to confuse.
 
 
 35
 Moreover, "[a] corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf". Transgo, Inc., 768 F.2d at 1021 (internal quotation marks and citation omitted). While the particular act of unfair competition involved in that stage of Transgo was a conspiracy to pass off goods, the Fourth Circuit has recognized the applicability of the principle to trademark infringement generally. Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 149 (4th Cir.1987) ("A corporate official may be held personally liable for tortious conduct committed by him, though committed primarily for the benefit of the corporation. This is true in trademark infringement and unfair trade practices cases.") (citing Transgo ). See also Donsco, Inc. v. Casper Corp., 587 F.2d 602, 606 (3d Cir.1978) (corporate president who authorized and approved corporation's act of unfair competition liable under § 43(a); a corporate officer who knowingly and substantially participates in corporation's act of infringement is personally liable); Electronic Laboratory Supply Co. v. Cullen, 977 F.2d 798, 807-808 (3d Cir.1992).
 
 
 36
 The district court was correct that an injunction against appellant corporation would, under Rule 65, bind the individual appellants as corporate officers. It nonetheless erred in dismissing the individual appellants even though it correctly dismissed CIHD's damages claims. If the individual appellants were to be found liable for their acts under § 43(a), CIHD would be entitled, under 15 U.S.C. § 1117(a), to recover "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action", and, "in exceptional cases ... reasonable attorney fees". Even though CIHD failed to create a genuine issue of material fact as to the individual appellant's profits or CIHD's actual damages, the individuals could still be liable for the costs of the action and any attorney's fees that might be awarded. Therefore, the district court should not have dismissed CIHD's claims against the individual appellants.
 
 
 37
 II. Time For Filing Motion for Attorney's Fees
 
 
 38
 CIHD challenges the district court's denial of its motion to extend the time for the filing of a motion for attorney's fees. Federal Rules of Civil Procedure 54(d)(2)(A) and (B), as amended effective December 1, 1993, require a claim for attorney's fees to be made by motion "filed and served no later than 14 days after entry of judgment"; a court can by order provide a different deadline. Although CIHD moved the court for an extension of time pursuant to Rule 54(d) itself, the district court noted that CIHD appeared to be seeking a retroactive extension of time, since the 14-day deadline had already expired. The court properly treated the motion as one under Federal Rule of Civil Procedure 6(b) to allow filing after the expiration of the deadline because the failure to timely file was the result of excusable neglect. Because Rule 6(b) commits the question to the court's discretion, we review a decision under Rule 6(b) for abuse of discretion. Kyle v. Campbell Soup Co., 28 F.3d 928, 930 (9th Cir.), cert. denied, 513 U.S. 867, 115 S.Ct. 185, 130 L.Ed.2d 119 (1994).
 
 
 39
 Judgment below was rendered on April 7, 1995 and entered on April 10, 1995. CIHD's counsel filed a petition seeking an award of attorney's fees on April 28, 1995. On May 9, 1995, CIHD filed a motion to extend the time for the filing of its petition. In the affidavit in support of that motion, Laird Lucas, one of CIHD's attorneys, stated that the motion was filed late because he and his co-counsel had been unaware of the relevant changes in the federal and local rules.
 
 
 40
 The district court denied appellee's motion. The court ruled that appellee was "requesting relief based solely on counsel's unfamiliarity with the amended Local and Federal Rules" and held that this did not constitute excusable neglect. The court quoted from the Supreme Court opinion in Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), which stated that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect". Id. at 392, 113 S.Ct. at 1496. The district court noted that "[i]f compelling circumstances had been presented such as illness, injury or death of counsel, or members of his family, or fire, flood, vandalism or destruction of counsel's law office or word processing equipment, the Court would be more inclined to seriously consider the motion for an extension of time".
 
 
 41
 On May 23, 1995, CIHD filed a motion to reconsider with an accompanying affidavit by Lucas. Lucas declared that he had undergone outpatient surgery on April 20, 1995 and was confined to bed rest through April 22, 1995. He also declared that he was unable to devote any substantial time to preparing the fee application from April 13, 1995 to April 16, 1995 because his wife's illness with flu and strep throat required him to care for his two children during that period. The court denied the motion, finding that "the sole reason for Plaintiff's failure to timely file the Petition was unfamiliarity with the Local Rules in effect at that time". The court also noted that CIHD "was also represented by another capable and competent attorney who was lead trial counsel and presumably available to assist during the time in question".
 
 
 42
 CIHD argues, essentially, that the court abused its discretion by not applying the proper legal standard for "excusable neglect", which it argues is set forth in Pioneer,[4] where the Court concluded that the question "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include ... the danger of prejudice to the [other party], the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." 507 U.S. at 395, 113 S.Ct. at 1498.
 
 
 43
 The district court did not abuse its discretion in holding that CIHD's counsel's ignorance of the amended procedural requirements for the filing of a request for attorney's fees was not excusable neglect. Although the court did not discuss the factors set forth in Pioneer, it did follow this court's decision in Kyle. In that case, the court interpreted Pioneer as not changing "the general rule that a mistake of law does not constitute excusable neglect". 28 F.3d at 932. The court held that in the absence of "a persuasive justification for ... misconstruction of nonambiguous rules" there was "no basis for deviating from the general rule". Id. at 931-32. The court in Kyle therefore reversed, as an abuse of discretion, a district court's decision to enlarge time for filing a petition for attorney's fees on the basis that such a misconstruction was excusable neglect. If misconstruction of a nonambiguous rule cannot, under Ninth Circuit precedent, constitute excusable neglect to justify an extension of time, it clearly would have been abuse of discretion for the district court in this case to hold that ignorance of an amendment to a rule could constitute excusable neglect. As a result, under this court's interpretation of Pioneer in Kyle, there was no need for the court to consider expressly the equitable factors listed in Pioneer.[5]
 
 III. Attorney Fees on Appeal
 
 44
 CIHD seeks an award of attorney's fees on appeal. Section 35(a) of the Lanham Act provides that a court "in exceptional cases may award reasonable attorney fees to the prevailing party" when a violation of § 43(a) has been established. 15 U.S.C. § 1117(a). "While the term 'exceptional' is not defined in the statute, generally a trademark case is exceptional for purposes of an award of attorneys' fees when the infringement is malicious, fraudulent, deliberate or willful." Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1408 (9th Cir.), cert. denied, 510 U.S. 815, 114 S.Ct. 64, 126 L.Ed.2d 34 (1993). Because the district court found that appellants "knowingly, intentionally and deliberately adopted and used [the CIHD name] in order to cause confusion [and] obstruct [CIHD's] pursuit of its environmental agenda", this case falls within that class of exceptional cases in which courts may award attorney's fees pursuant to § 1117(a). CIHD is therefore entitled to reasonable attorney's fees on appeal.
 
 CONCLUSION
 
 45
 We affirm the district court's findings and conclusions with respect to appellants' infringement of CIHD's tradename, as well as its dismissal of CIHD's damages claims and its denial of CIHD's motion for an extension of time in which to file a motion for attorney's fees. However, we reverse the district court's dismissal of CIHD's complaint as against the individual appellants and remand the case for further proceedings.
 
 
 46
 Plaintiff-Appellee, The Committee for Idaho's High Desert, Inc., in No. 95-35439, and Plaintiff-Appellant, The Committee for Idaho's High Desert, Inc., in No. 95-35472 are entitled to costs.
 
 
 47
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED
 
 
 
 [1]
 This case appears to involve an instance of "greenscamming", a "practice of giving environmentally friendly names to groups whose agendas have little to do with the welfare of the environment". Jane Fritsch, "Friend or Foe? Nature Groups Say Names Lie", New York Times at 1 (Mar. 25, 1996)
 
 
 [2]
 This recitation of the facts is drawn primarily from the district court's findings of fact, virtually all of which go unchallenged by the appellants
 
 
 [3]
 Appellants appear to attempt to challenge this conclusion in their reply brief. An issue raised for the first time in a reply brief, however, is waived. Thompson v. Commissioner, 631 F.2d 642, 649 (9th Cir.1980), cert. denied, 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981). Appellants' challenge to the district court's nonexistent "finding" that CIHD was an "unincorporated and non-profit association" might, however, be read to state a challenge to the district court's conclusion that CIHD could sue under Rule 17(b) as an unincorporated association
 
 
 [4]
 While Pioneer involved Bankruptcy Rule 9006(b), the Court's analysis was based on the plain meaning of the phrase "excusable neglect" and drew on its use in other procedural contexts, including Fed.R.Civ.P. 6(b) and Fed.R.Crim.P. 45(b). This court has held that the Court's analysis of "excusable neglect" in Pioneer applies to the use of that phrase in Fed.R.App.P. 4(a)(5). Reynolds v. Wagner, 55 F.3d 1426, 1429 (9th Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 339, 133 L.Ed.2d 237 (1995). The same decision suggests that the analysis applies to Fed.R.Civ.P. 6(b) as well
 
 
 [5]
 The Advisory Committee Notes to the 1993 Amendments to Rule 54, which instituted the 14-day filing deadline, explain that "[a] new period for filing will automatically begin if a new judgment is entered following a reversal or remand by the appellate court ...". Because we today reverse the district court's dismissal of the individual appellants, further proceedings below may lead to the entry of a new judgment that will begin a new period for filing