**MEXICAN FOOD SPECIALTIES, INC., a Michigan corporation, Plaintiff,**

v.

**FESTIDA FOODS, LTD., a Michigan corporation; Raul Vega, an individual; Berneá Food Service, Inc., a Michigan corporation; Phillip Berner, an individual, Defendant.**

Civil Action No. 97–40016.

United States District Court, E.D. Michigan, Southern Division.

Feb. 11, 1997.

Richard A. Gaffin, Miller, Canfield, Paddock & Stone, Grand Rapids, MI, for Phillip Berner.

Luis M. Acosta, Bliss & McGlynn, P.C., Troy, MI, for Mexican Food Specialties, Inc.

## MEMORANDUM OPINION AND ORDER GRANTING PRELIMINARY INJUNCTION

GADOLA, District Judge.

Before the court is plaintiff, Mexican Food Specialties, Inc.'s ("MFS"), motion for a preliminary injunction, filed January 28, 1997. MFS seeks to preliminarily enjoin defendants, Festida Foods, Ltd. ("Festida"), Raul Vega ("Vega"), Berneá Food Service, Inc. ("Berneá"), and Philip Berner ("Berner") (collectively "Defendants"), from using and distributing an allegedly infringing trade dress. This court heard oral argument on February 7, 1997. For the reasons set forth below, this court will grant plaintiff's motion for preliminary injunction.

### Background

MFS since its inception in 1980 has sold specialty Mexican foods, including tortillas. Mark Gutierrez ("Gutierrez") is its founder and president. In the mid–1980's, defendant Berneá became the exclusive distributor of MFS's tortillas in Michigan. Defendant Berner is the principal of Berneá. In 1988 MFS began using the trademark "Don Marcos" on its food products. That mark was registered with the United States Patent and Trademark Office on September 24, 1991.[1] MFS claims that it has exclusive rights to the appearance of the product packaging, i.e. trade dress[2], for its Don Marcos tortillas product which it has used continuously since

---

1. The trademark registration number is 1,658,-410 and includes the mark "Don Marcos" along with the design of a young boy wearing a sombrero bearing the name "Don Marcos."

2. "The 'trade dress' of a product is essentially its total image and overall appearance." " 'It involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques.' " *Two Pesos, Inc., v. Taco Cabana, Inc.*, 505 U.S. 763, 764 n. 1, 112 S.Ct. 2753, 2755 n. 1, 120 L.Ed.2d 615, 621 n. 1 (1992).

1988. It is the alleged infringement of this trade dress by the defendants that is the subject of the instant litigation.

In October 1996, MFS ended its business dealing with Berneá allegedly due to a overdue debt to MFS in the amount of $125,-000.00.[3] Subsequent to the termination of the business dealings between MFS and Berneá, Berneá established a business relationship with defendant Festida to distribute Festida products including Festida's "Don Raul" tortillas. MFS alleges that in late December defendants began distributing Don Raul tortillas in a trade dress that infringed the Don Marcos trade dress. The two tortillas products are apparently distributed side by side in many of the same retail food outlets.[4] MFS claims that the defendants intentionally introduced the Don Raul tortillas at a time that they knew Gutierrez would be out of the country. Upon his return on January 16, 1997 Gutierrez discovered the alleged infringement and commenced this action.

MFS claims that the following details from plaintiff's trade dress were copied by the defendants [5]:

    i. The use of a plastic bag which has a clear plastic central horizontal band between colored top and bottom bands;

    ii. the use of the colors green and red for the top and bottom bands (Plaintiff uses a top green band and a bottom red band for both its flour and corn tortillas; Defendants uses a green band top and bottom for its flour tortillas and a red band, top and bottom, for its corn tortilla);

    iii. the same ratio of sizes of its top color band, clear central band, and bottom colored band;

    iv. the use of a male figure wearing a broad brimmed Mexican sombrero, on the brim of which is presented in cursive writing a male name preceded by the word "Don", the detail of the male figure colored in black, red and yellow;

    v. the presentation of the word "Tortillas" in block print across the bottom of the centrally located male figure;

    vi. the presentation of stalks of wheat or corn (on flour or corn tortillas, respectively) on each side of the male figure at the edges of the clear horizontal band;

    vii. the use in the upper left hand corner of the word "Quality" preceded by a superlative adjective;

    viii. the identical placement of the word "microwaveable," underscored by seven pairs of identical squiggles;

    ix. the identical placement in the upper right hand corner of the upper color band for a comparative laudatory phrase involving a unit of weight measurement ("ounce for ounce" used by Plaintiff, "pound for pound" used by Defendants");

    x. the use in the identical location of both packages of the curved block text indicating both the number and composition of the tortillas immediately above the head of the central male figure;

    xi. the packaging of identical weights for the parties' respective flour and corn tortillas, and their identical placement at the bottom right hand corner; and

    xii. the identical placement of the identical phrase "keep refrigerated" at the bottom of the left hand corner of the lower color band.

Defendants note the following differences between the MFS and Festida products:

    i. the MFS package features a young boy in a sombrero bearing the words "Don Marcos," while the Festida package has an adult male wearing a sombrero with the words "Don Raul" on its brim. The adult depicted on the Festida

---

**3.** That alleged debt is apparently the subject of pending state court action.

**4.** Defendants claim, however, that while MFS's Don Marcos tortillas are sold on an eye level shelf, their Don Raul tortillas are sold on an above eye level shelf.

**5.** *See* exhibits A and B of the Gutierrez declaration, filed in support of MFS's motion for a preliminary injunction, for the Don Marcos trade dress and exhibits AA and BB for the Don Raul trade dress.

packaging is Raul Vega, the president of Festida.

ii. the MFS packaging has a green band at its top and a red band along its bottom, while the Festida packaging has either a red top and bottom border or a green top and bottom border depending on whether the tortilla is corn or flour.

iii. The MFS packaging prominently displays the words "Don Marcos" on the red border, while the Festida packaging prominently displays the word "Festida" on the bottom red border.

## Discussion

The parties agree that in order to succeed on its claim for a preliminary injunction, MFS must establish the following four factors:

(1) that plaintiff has shown a likelihood of success on the merits;

(2) that irreparable harm could result to plaintiff if the preliminary injunction is not issued;

(3) that issuing the preliminary injunction would not harm third parties; and

(4) that the public interest would be served by issuance of the preliminary injunction.

*See Basicomputer Corp. v. Scott,* 973 F.2d 507, 511 (6th Cir.1992); *Gougeon Brothers, Inc. v. Hendricks,* 708 F.Supp. 811, 813 (E.D.Mich.1988).

### A. Likelihood of Success on the merits.

15 U.S.C. § 1125(a)(1) (the "Lanham Act") provides, in relevant part, that:

Any person who, on or in connection with any ... container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin ... which is likely to cause confusion, to cause mistake, or to deceive ... as to the origin ... of his or her goods ... shall be liable in a civil

action by any person who believes that he or she is or is likely to be damaged by such act.

This section has been construed to protect the trade dress of a product under the same principles that protect registered trademarks. *Two Pesos, Inc., v. Taco Cabana, Inc.,* 505 U.S. 763, 767, 112 S.Ct. 2753, 2756, 120 L.Ed.2d 615, 623 (1992). Trade dress is classified in categories of generally increasing distinctiveness. A dress may be "(1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Id.* (quoting *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir.1976)). The latter three categories, because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and entitled to protection. The first two categories may become distinctive when either acquires a secondary meaning[6] in the marketplace. *Id.,* 505 U.S. at 768–69, 112 S.Ct. at 2757, 120 L.Ed.2d at 624. Nonfunctionality and proof of a likelihood of confusion are, also, a prerequisite for protection. *Id.,* at 769, 112 S.Ct. at 2758, 120 L.Ed.2d at 624.

■ Thus, to sustain a claim for trade dress infringement, a plaintiff must prove that the allegedly misappropriated features of the dress (1) are inherently distinctive or have acquired distinction by virtue of secondary meaning in the marketplace; (2) are not functional; and (3) create a likelihood of confusion as to the source of defendant's goods. *Windmill Corp. v. Kelly Foods Corp.,* 1996 WL 33251, **3 (6th Cir. Jan. 26, 1996) (Rule 24(c) case).[7]

Since there is a relative dearth of Sixth Circuit case law discussing whether product packaging is inherently distinctive, this court is guided by those circuits which have addressed this issue. In *Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.,* 659 F.2d 695 (5th Cir.1981), *cert. denied,* 457 U.S. 1126, 102 S.Ct. 2947, 73 L.Ed.2d 1342 (1982),

6. Secondary meaning is used generally to indicate that a dress has come through use to be uniquely associated with a specific source. *Id.* at 7 n. 4, 112 S.Ct. at 27 n. 4, 120 L.Ed.2d at 622 n. 4.

7. Both parties cite to *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.,* 931 F.2d 1100,

1105 (6th Cir.1991) for the elements needed to succeed under a 15 U.S.C. § 1125(a) claim. That case, however, was not a packaging trade dress infringement case and moreover, was decided prior to *Two Pesos.*

a decision upon which the *Two Pesos* Court relied heavily, the Fifth Circuit determined that the plaintiff's bottles and packaging were inherently distinctive, noting that "the possible varieties of advertising display and packaging are virtually endless." *Id.* at 703. The Second Circuit, in *Paddington Corp. v. Attiki Importers & Distributors Inc.*, 996 F.2d 577 (2nd Cir.1993), expounded upon *Chevron*, stating that:

> Since the choices that a producer has for packaging are, as the Fifth Circuit noted, almost unlimited, typically a trade dress will be arbitrary or fanciful and thus inherently distinctive, and the only real question for the courts will be whether there is a likelihood of confusion between the products, (citation omitted), provided, of course, the trade dress is not functional.

*Id.* at 583. The Second Circuit in *Paddington* went on to state that:

> Trade dresses often utilize commonly used lettering styles, geometric shapes, or colors, or incorporate descriptive elements, such as an illustration of the sun on a bottle of suntan lotion. While each of these elements, individually would not be inherently distinctive, it is the combination of elements and the total impression that the dress gives to the observer that should be the focus of a court's analysis of distinctiveness. If the overall dress is arbitrary, fanciful, or suggestive, it is inherently distinctive despite its incorporation of generic or descriptive elements. *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 936 (7th Cir. 1989), *cert. denied* 493 U.S. 1075, 110 S.Ct. 1124, 107 L.Ed.2d 1030 ... (1990). (citation omitted). One could no more deny protection to a trade dress for using commonly used elements than one could deny protection to a trademark because it consisted of a combination of commonly used letters of the alphabet.

*Id.* at 584.

■ Neither party thoroughly addresses the threshold question of whether the trade dress of the Don Marcos tortillas packaging is inherently distinctive or necessitates a

showing of secondary meaning using the *Abercrombie* analysis. Nevertheless, this court finds that the packaging is inherently distinctive. While it may be true that some of the features of the Don Marcos package are generic or descriptive, i.e. the depiction of an individual wearing a sombrero, the use of red and green to signify a connection to Mexico, the use of a corn or wheat stalk and the use of the title "Don," it is the "combination of elements and the total impression that the dress gives to the observer that should be the focus of a court's analysis of distinctiveness." *See Paddington*, 996 F.2d at 584.

In this case, the tone, layout and ratios of the colors; the depiction of a male figure wearing a sombrero with stalks of wheat or corn on each side of the figure; the style and size of the lettering, including the words "Tortillas", "Don," "Quality," "Microwaveable" and the text indicating both the number and composition of the tortillas; all contribute to the overall appearance of the product's packaging which is "undeniably arbitrary." *See, e.g., Paddington*, 996 F.2d at 584 (after considering many of the same factors, finding "the overall appearance of the bottle's labeling, [to be] undeniably arbitrary.").

Since the Don Marcos packaging is arbitrary, and therefore protectable under the Lanham Act, a secondary meaning analysis is unnecessary.[8] Moreover, since the defendants are not alleging functionality as a defense, this court will turn to the likelihood of confusion to determine if plaintiff has shown a likelihood of success on the merits.

**Likelihood of confusion.**

In doing so, this court is guided by the Sixth Circuit's opinion in *Frisch's Restaurants, Inc. v. Elby's Big Boy*, 670 F.2d 642 (6th Cir.1982). In *Frisch's*, the Sixth Circuit identified an eight factor test for determining a likelihood of confusion:

1. strength of plaintiff's [trade dress];
2. relatedness of the goods;
3. similarity of the [trade dress];
4. evidence of actual confusion;

---

8. Even if this court were to find that the packaging is suggestive, a secondary meaning analysis would still be unnecessary.

5. marketing channels used;

6. likely degree of purchaser care and sophistication;

7. defendant's intent in selecting the [trade dress]; and

8. likelihood of expansion of the product lines using the [trade dress].

*Id.* at 647.

In *Wynn Oil Co. v. Thomas,* 839 F.2d 1183, 1186 (6th Cir.1988), the Sixth Circuit explained how the *Frisch's* factors are to be applied:

> These factors are simply a guide to help determine whether confusion would be likely to result from simultaneous use of the two contested [dresses.] They imply no mathematical precision, and a plaintiff need not show that all, or even most, of the factors listed are present in any particular case to be successful.

*Id.* at 1186. "The ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.,* 931 F.2d 1100, 1107 (6th Cir.1991).

### 1. Strength of plaintiff's trade dress.

■ The same factors that this court considered in determining whether the trade dress is inherently distinctive are also relevant in determining the strength of plaintiff's trade dress. As stated above, the combination of features comprising the packaging of the Don Marcos product is inherently distinctive. Moreover, the Don Marcos mark is trademark registered and enjoys incontestable status.

This court can also consider evidence of secondary meaning in determining the strength of plaintiff's trade dress. *See Paddington,* 996 F.2d at 585. That evidence shows that the Don Marcos trade dress has been used on an exclusive and continuous basis for over eight years. In addition, the related sales volume has been over 1.5 million dollars per year for the last eight years. This supports a finding of secondary meaning as well. *See* J. Thomas McCarthy, *McCarthy's Desk Encyclopedia of Intellectual Property,* p. 394 [2d ed.]. Accordingly, this court finds that this factor favors plaintiff.

### 2. Relatedness of the goods.

The respective goods of the parties are identical, to wit: tortillas. Accordingly, this factor favors plaintiff.

### 3. Similarity of the trade dress.

The elements of the two products' trade dress that are similar include:

i. The use of a plastic bag which has a clear plastic central horizontal band between colored top and bottom bands;

ii. the use of the colors green and red for the top and bottom bands (Plaintiff uses a top green band and a bottom red band for both its flour and corn tortillas; Defendants uses a green band top and bottom for its flour tortillas and a red band, top and bottom, for its corn tortilla);

iii. the same ratio of sizes of its top color band, clear central band, and bottom colored band;

iv. the use of a male figure wearing a broad brimmed Mexican sombrero, on the brim of which is presented in cursive writing a male name preceded by the word "Don", the detail of the male figure colored in black, red and yellow;

v. the presentation of the word "Tortillas" in block print across the bottom of the centrally located male figure;

vi. the presentation of stalks of wheat or corn (on flour or corn tortillas, respectively) on each side of the male figure at the edges of the clear horizontal band;

vii. the use in the upper left hand corner of the word "Quality" preceded by a superlative adjective;

viii. the identical placement of the word "microwaveable," underscored by seven pairs of identical squiggles;

ix. the identical placement in the upper right hand corner of the upper color band for a comparative laudatory phrase involving a unit of weight measurement ("ounce for ounce" used by Plaintiff,

"pound for pound" used by Defendants");

   x. the use in the identical location of both packages of the curved block text indicating both the number and composition of the tortillas immediately above the head of the central male figure;

   xi. the packaging of identical weights for the parties' respective flour and corn tortillas, and their identical placement at the bottom right hand corner; and

   xii. the identical placement of the identical phrase "keep refrigerated" at the bottom of the left hand corner of the lower color band.

More significant than the striking similarities in various details are the dresses' similarity in overall appearance. *See Paddington,* 996 F.2d at 586. Each package's lettering style, layout, use of figurines and coloration, taken together, convey the same overall appearance to the retail purchaser. *Cf. id.*[9]

The defendants note the following differences:

   i. the MFS package features a young boy in a sombrero bearing the words "Don Marcos," while the Festida package has an adult wearing a sombrero with the words "Don Raul" on its brim. The adult depicted on the Festida packaging is Raul Vega, the president of Festida.

   ii. the MFS packaging has a green band at its top and a red band along its bottom, while the Festida packaging has either a red top and bottom border or a green top and bottom border depending on whether the tortilla is corn or flour.

   iii. The MFS packaging prominently displays the words "Don Marcos" on the red border, while the Festida packaging prominently displays the word "Festida" on the bottom red border.

These differences, however, are minimal when viewed in the entirety of the trade dress. Accordingly, this court will find that this factor favors plaintiff.

#### 4. Evidence of actual confusion.

There has been no evidence of actual confusion presented to this court. By the same token, there is likewise no evidence of an absence of confusion. Accordingly, this factor favors neither party.

#### 5. Marketing channels used.

The parties use identical marketing channels. Both parties are located in Michigan and sell to the same customer base, to wit: purchasers of ready-made tortillas available at retail outlet food stores. Accordingly, this factor favors plaintiff.

#### 6. Likely degree of purchaser care and sophistication.

The retail level customer sophistication is likely not significant. While plaintiff does not offer empirical evidence, this court can rely on common sense and real life experience to conclude that the average customer is harried and not likely to exercise a high degree of care in purchasing an eighty-nine[10] cent package of tortillas that are situated side by side. *See, e.g., Specialty Brands, Inc. v. Coffee Bean Distributors, Inc.,* 748 F.2d 669 (Fed.Cir.1984) (finding that purchasers of relatively inexpensive products were held to a lesser standard of purchasing care. *See also Meat Indus. Suppliers, Inc. v. Kroger Co.,* 130 U.S.P.Q. 434, 439 (N.D.Ill. 1961) (stating that "[i]t has been asserted that the average purchaser undergoes, while

---

**9.** The defendants would argue that plaintiff has not offered any empirical evidence, i.e. surveys, that suggests customers are confused by the appearance of the two trade dresses. That argument, however, is misguided as circuit courts that have addressed the issue have held that survey evidence is not a requirement. *See, e.g., Committee for Idaho's High Desert Inc. v. Yost,* 39 U.S.P.Q.2d 1705, 1711, 92 F.3d 814 (9th Cir. 1996); *Charles Jacquin et Cie, Inc., v. Destileria Serralles, Inc.,* 17 U.S.P.Q.2d 1104, 1110, 921 F.2d 467 (3d Cir.1990) (stating that "we have not

yet held that a consumer survey is mandatory to establish likelihood of confusion in a Lanham Act case and do not so hold in this case."); *Indianapolis Colts Inc. v. Metropolitan Baltimore Football Club,* 31 U.S.P.Q.2d 1811, 1815, 34 F.3d 410 (7th Cir.1994) (J. Posner stating that the battle of experts that often follow presentation of survey evidence is "frequently unedifying.").

**10.** The court notes that there has been evidence that at least some of plaintiff's Don Marcos tortillas product has been sold for ninety-nine cents.

in a supermarket, an experience not unlike that of hypnosis.").

Defendants argue that there is consumer sophistication at the wholesale level by supermarket agents. This argument, however, misses the mark. It is clearly the retail customer that is at issue here.

Under this factor, this court can also consider the relative location of the products on the shelving. *See, e.g., Pure Foods, Inc. v. Minute Maid Corp.*, 214 F.2d 792 (5th Cir. 1954) (finding that "Minute Maid" for frozen fruit juice likely to be confused with "Minute Maid" for frozen meats; both are "displayed in the frozen departments in ... stores, often not far apart."). In this case, as evidenced by the photographs, the two products appear to be side-by-side if not intermingled. Even if in some instances, the respective products appear on different shelf levels, as defendants contend, they are nevertheless "not far apart." *See id.* Accordingly, this court finds that this factor favors the plaintiff.

### 7. Intent in selection of the mark.

The Second Circuit has said that "[w]here a second-comer acts in bad faith and intentionally copies a trademark or trade dress, a presumption arises that the copier has succeeded in causing confusion." *Paddington,* 996 F.2d at 586–87 (citing cases). The court went on to state that:

> In determining a defendant's intent, "actual or constructive knowledge" of the prior user's mark or dress may indicate bad faith. (citation omitted). Where such prior knowledge is accompanied by similarities so strong that it seems plain that deliberate copying has occurred, we have upheld findings of bad faith. (citing *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 259 (2d Cir.1987).

*Id.* at 587. In *Mobil,* the court stated: "In this circuit and others, numerous decisions

have recognized that the second comer has a duty to so name and so dress his product as to avoid all likelihood of consumers confusing it with the product of the first comer.")

Here the defendants had irrefutable knowledge of plaintiff's trade dress by virtue of having distributed plaintiff's product for eight years. As stated previously, the similarities between the two products are manifold. It is not likely that these similarities are mere coincidence where an endless number of packaging features were available to the defendants.

The defendants' case, *Mana Products, Inc. v. Columbia Cosmetics Mfg., Inc.*, 65 F.3d 1063 (2nd Cir.1995), is inapposite as it involved a compact makeup case. The court noted that "as a whole, the compacts' size and shape—with their rectangular and square designs—are common characteristics of the entire genre of makeup compacts." *Id.* at 1070. This cannot be said of tortillas packaging as evidenced by seven competing tortillas brands that have used sufficiently different product packaging including Festida's low fat tortilla product which uses a trade dress that is not alleged to be infringing by MFS.[11] Accordingly, this factor favors the plaintiff.

### 8. Likelihood of expansion of the product lines.

As the current product of the subject trade dress of the parties is identical, to wit: tortillas, this factor is irrelevant and does not favor either party.

In sum, six factors favor the plaintiff and two factors favor neither parties. Accordingly this court finds that the *Frisch's* factors for determining a likelihood of confusion have been satisfied and therefore plaintiff is likely to succeed on the merits.

---

11. The defendants argue that the "LaMichoacana" packaging is also an infringement of the plaintiff's trade dress. (LaMichoacana is owned by the father of Gutierrez). This court need not discuss that situation in depth as case law has established that the allegation that the rights of a third party are superior to those of the plaintiff is not available as a defense to trademark infringement. *Committee for Idaho's High Desert Inc. v.*

*Yost,* 39 U.S.P.Q.2d 1705, 1709–10, 92 F.3d 814 (9th Cir.1996): "Defendant is no less an infringer because it is brought to account by a Plaintiff whose rights may or may not be superior to the whole world. The Plaintiff's speculative dispute with a third party does not concern the Defendant.", *citing,* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,* § 31.39[4] [3d ed.].

### B. Irreparable harm.

 This court has previously held that it should presume irreparable harm where plaintiff demonstrates false or misleading advertising in violation of the Lanham Act. *Janda v. Riley–Meggs Industries, Inc.*, 764 F.Supp. 1223, 1229 (E.D.Mich.1991). Moreover, the Sixth Circuit has stated that:

"A finding of irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears." (citations omitted). The irreparable injury flows "both from the potential difficulty of proof of plaintiff's damages, and also from the impairment of intangible values...."

*Wynn Oil Co. v. American Way Service Corp.*, 943 F.2d 595, 608 (6th Cir.1991). Accordingly, this court finds that irreparable harm is presumed based on a finding of likelihood of confusion.

### C. Potential harm to third parties.

Harm to third parties is minimal. The public is free to purchase any tortillas product that does not infringe on plaintiff's trade dress, including the Festida product that does not use the allegedly infringing trade dress.

### D. The public interest.

The relevant public, i.e., purchasers of tortillas, clearly have an interest in being free from confusion. As the court stated in *Gougeon Bros.*: "Trademark infringement, by its very nature, adversely affects the public interest in the 'free flow' of truthful commercial information." *Gougeon Bros.*, 708 F.Supp. at 818.

### Conclusion

Because all of the prerequisites necessary for a preliminary injunction to issue are present in this case, this court will enter a preliminary injunction enjoining the defendants from continued use of the infringing trade dress.

### *ORDER*

IT IS HEREBY ORDERED that, for the reasons stated, defendants, FESTIDA FOODS, LTD., RAUL VEGA, BERNEÁ FOOD SERVICE, INC., and PHILLIP BERNER, their shareholders, employees, agents, attorneys, officers, directors, assigns, and other persons acting at their direction or supervision or acting in concert with them, are hereby preliminarily enjoined until further notice of this court from any use and any distribution of the infringing trade dress currently being used by the defendants for its "Don Raul" tortillas, which trade dress is shown in Exhibits AA and BB of the Declaration of Mark A. Gutierrez in Support of Plaintiff Mexican Foods, Inc.'s Motion for Preliminary Injunction filed on January 28, 1997, and will recall the same.

IT IS FURTHER ORDERED that defendants shall have eight (8) weeks from the entry of this order to fully comply with this preliminary injunction.

IT IS FURTHER ORDERED that plaintiff, MEXICAN FOOD SPECIALTIES, INC., shall post a bond in the amount of thirty-five thousand ($35,000.00) dollars.

**SO ORDERED.**