RIGGS MARKETING INC.

v.

MITCHELL.

No. CV–N–96–053–ECR(RAM).

United States District Court,
D. Nevada.

Sept. 24, 1997.

Michael D. Rounds, Kirstin M. Jahn, of Rounds, Wickes & Cartlidge, Reno, NV, for Plaintiff.

Ernest I. Gifford, of Gifford, Krass, Groh, Sprinkle, Patmore, Anderson & Citkowski, Birmingham, MI, Brian M. McMahon, of Hamilton & McMahon, Reno, NV, for Defendants.

REED, Senior District Judge.

Presently before the Court is the Magistrate Judge's Report and Recommendation ("Report") (# 85) to which no party has ob-

jected. For the reasons outlined below, this Report is Affirmed and Adopted.

## I. Background

Defendant Mitchell Golf Equipment Company ("MGEC") and its president, Defendant L. Edward Mitchell, allegedly own two patents for devices used in adjusting the shaft and head of golf clubs. The two patents are the " '431 patent," for a "golf club straightening device," and the " '098 patent," for an "apparatus for adjusting golf club loft and lie." Plaintiff Riggs Marketing, *1249 Inc. ("RMI"), a Nevada corporation, manufactures a device (the "Universal") which may infringe Defendants' patents. Plaintiff brought this declaratory relief action, seeking (among other things) a judgment that the patents are invalid and/or not infringed. Amended Compl. (# 31).

Plaintiff moved for summary judgment (# 55) on the issue of infringement; that is, RMI sought a summary judgment that neither patent has been infringed. We referred the matter to the Honorable Robert A. McQuaid, Jr., who, after a very careful analysis of the factual and legal issues presented, issued his Report (# 85) recommending denial of summary judgment as to the '431 patent and grant of summary judgment as to the '098 patent. As neither side has objected to this recommendation, we will only reverse if the Report is clearly erroneous or contrary to law. *U.S. v. Remsing,* 874 F.2d 614, 617 (9th Cir.1989).

## II. '431 Patent

The Magistrate Judge found Defendants' expert's affidavit sufficient to raise a genuine issue of material fact as to whether the Universal infringes the '431 patent under the doctrine of equivalents. Report at 7(# 85). We agree, and the Report is therefore neither clearly erroneous nor contrary to law on this issue.

## III. '098 Patent

The Magistrate Judge found that, on the facts as conceded by Defendant Mitchell in his deposition and in his affidavit, the component of the Universal crucial to the present action—the "bracket"—does not literally infringe the '098 patent. We agree. Accordingly, the Report is neither clearly erroneous nor contrary to law.

IT IS, THEREFORE, HEREBY ORDERED THAT the Magistrate Judge's Report and Recommendation (Doc. # 85) is AFFIRMED and ADOPTED, and Plaintiff's motion for summary judgment (# 55) is GRANTED with respect to the '098 patent and DENIED with respect to the '431 patent.

August 20, 1997

IT IS HEREBY ORDERED that the report and recommendation (# 84), filed by the Magistrate Judge, on July 23, 1997, is APPROVED and ADOPTED. No objections were filed within the time required by the rules.

IT IS FURTHER ORDERED that said motion for partial summary judgment (# 50) is DENIED.

The report and recommendation of the Magistrate Judge is not clearly erroneous or contrary to law.

## REPORT AND RECOMMENDATION

McQUAID, United States Magistrate Judge.

July 23, 1997

This Report and Recommendation is made to the Honorable Edward C. Reed, Jr., United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. Section 636(b)(1)(B) and the Local Rules of Practice, LR IB 1–4.

This matter is before the court on Defendant Mitchell's motion for partial summary judgment on the issue of trademark infringement (Doc. # 50). Plaintiff Riggs Marketing, Inc., (RMI) has opposed the motion (Doc. # 63), and Defendant has replied (Doc. # 68).

## I. BACKGROUND

This motion concerns a claim of trademark infringement. Both parties deal in golf club bending machines. The dispute concerns the use of the word "universal." Plaintiff's machine is called the "Universal Loft and Lie Bending Machine." (See Doc. # 50, exhibit B). Defendant's advertisements have the

words "Universal Standard" printed across the top of the page in a similar size and style as Plaintiff's advertisements. (See Doc. # 50, exhibit A). Plaintiff claims trademark infringement on the word "universal" pursuant to 15 U.S.C. Section 1125(a) (Docs. # 31 & 63).

Defendant filed a motion for partial summary judgment on the issue of trademark infringement (Doc. # 50), arguing that "universal" is a generic term under trademark law, and thus cannot be infringed upon. Plaintiff has responded (Doc. # 63), claiming that Defendant has failed to comply with procedural rules for filing a motion of summary judgment, and that "universal" is not generic in the golf club bending machine context, rather it is suggestive of their machine and thus deserves trademark protection. Defendant has replied (Doc. # 68), arguing that they have complied with the procedural rules, that "universal" is generic as a matter of law, and that there are no issues of material fact to prevent summary judgment.

## II. DISCUSSION

### Procedural Defects

■ Plaintiff argues that Defendant's summary judgment motion should be denied for failure to comply with Local Rule 56–1.[1] Specifically, Plaintiff argues that Defendant has failed to include a statement of material facts along with the motion for summary judgment. Defendant argues there was no need to comply with LR 56–1 as all the material facts are obvious from the motion and the attached exhibits. The Defendants are correct.

The material facts center around Plaintiff's allegedly protected use of the word "universal" as the name of their machine. Defendant's summary judgment motion contained copies of advertisements of both Plaintiff's and Defendant's machines (Doc. # 50, exhibit A & B). These advertisements provide an illustration of the material facts. Furthermore, Defendant's factual arguments are obvious from the summary judgment motion.

Therefore, because the spirit of LR 56–1 has been complied with, Defendant's motion should not be dismissed on a harmless procedural defect.

### Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which the moving party believes indicates the absence of a genuine issue of material fact. Fed.R.Civ.P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Once the moving party has met its initial responsibility, the burden shifts to the opposing party to establish that a genuine issue as to any material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Additionally, the nonmoving party must show that the dispute is genuine, i.e., that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively; only that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Association*, 809 F.2d 626, 630 (9th Cir.1987).

In determining whether to grant or deny the motion, the court examines the pleadings,

---

**1.** LR 56–1 states: "Motions for summary judgment and responses thereto shall include a concise statement setting forth each fact material to the disposition of the motion which the party claims is or is not genuinely in issue, citing the particular portions of any pleading, affidavit, deposition, interrogatory, answer, admission, or other evidence upon which the party relies."

depositions, answers to interrogatories, and admissions on file, together with any affidavits, if any. Fed.R.Civ.P. 56(c). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513; *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356 (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam)). However, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts ... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356 (citation omitted).

Defendant, as the movant for summary judgment, must inform the court of the basis for the motion. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. Defendant has satisfied this burden through the arguments and exhibits in the motion for summary judgment. (Doc. # 50). Specifically, Defendant argues that no issues of material fact exist as neither party disputes that each uses the term "universal." Defendant also argues that there is no proof that "universal" should receive a trademark protection.

Plaintiff, as the nonmoving party, must show that a genuine issue of material fact exists and that a reasonable jury could find trademark infringement. *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355.

Trademark Infringement

Plaintiff alleges that "universal" is infringed under 15 U.S.C. Section 1125(a).[2] Plaintiff requests relief in the form of an injunction to prevent Defendant from using "universal" in such a way as to confuse the public (Doc. # 31).

A claim of trademark infringement under 15 U.S.C. Section 1125(a) requires a Plaintiff to prove two elements: (1) Plaintiff has a valid trademark that is entitled to protection, and (2) Defendant's use of the same or similar trademark causes a "likelihood of confusion in the minds of the relevant consuming public." *Committee for Idaho's High Desert v. The Committee for Idaho's High Desert, Inc.,* 881 F.Supp. 1457, 1471 (D–Idaho 1995), modified on other grounds, 92 F.3d 814 [ 39 USPQ2d 1705 ] (9th Cir.1996), (citing to *Levi Strauss v. Blue Bell, Inc.,* 778 F.2d 1352, 1354 [ 228 USPQ 346 ] (9th Cir.1985)); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,* 826 F.2d 837, 841 [ 4 USPQ2d 1026 ] (9th Cir.1987).

1. Trademark Validity

The validity of a trademark depends on its distinctiveness, i.e., an ability to distinguish the goods it represents. *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768, 112 S.Ct. 2753, 2757, 120 L.Ed.2d 615 [ 23 USPQ2d 1081 ] (1992). The distinctiveness of a mark is measured in terms of its placement on a "continuum of marks from 'generic,' afforded no protection; through 'descriptive' or 'suggestive,' given moderate protection; to 'arbitrary' or 'fanciful,' awarded maximum protection." *E. & J. Gallo Winery v. Gallo Cattle Co.,* 967 F.2d 1280, 1291 [ 21 USPQ2d 1824 ] (9th Cir.1992) (quoting *Nutri/System, Inc. v. ConStan Industries, Inc.,* 809 F.2d 601, 605 [ 1 USPQ2d 1809 ] (9th Cir.1987)). The arguments of the parties center around the classification of the "universal" mark as either suggestive, descriptive, or generic. Because the parties have argued most extensively on the issue of whether "universal" is generic, the court will begin its analysis in that area.[3]

---

**2.** It should be noted that Plaintiff has never acquired federal trademark registration for "universal." However, federal registration is not required for trademark protection under 15 U.S.C. Section 1125(a). *New West Corp. v. NYM Company of California, Inc.,* 595 F.2d 1194, 1198–99 [ 202 USPQ 643 ] (9th Cir.1979). Trademark rights are acquired "by adoption and use, not by registration." *Hydro-Dynamics, Inc. v. George*

*Putnam & Co., Inc.,* 811 F.2d 1470, 1473 [ 1 USPQ2d 1772 ] (Fed.Cir.1987).

**3.** The court notes that if "universal" is found generic, then any analysis of "universal" as either suggestive or descriptive is moot, as a generic mark can never receive trademark protection. *Two Pesos,* 505 U.S. at 768, 112 S.Ct. at 2757; *Official Airline Guides v. Churchfield Publications, Inc.,* 6 F.3d 1385, 1391 [ 28 USPQ2d

### a. Generic Marks

Generic marks get no trademark protection because they refer "to the genus of which the particular product is a species," and thus do not indicate the origin of the product.[4] *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 [ 224 USPQ 327 ] (1985); *Two Pesos, Inc.*, 505 U.S. at 768, 112 S.Ct. at 2757, 120 L.Ed.2d 615; *Official Airline Guides v. Churchfield Publications, Inc.*, 6 F.3d 1385, 1391 [ 28 USPQ2d 1641 ] (9th Cir.1993); *Surgicenters of America, Inc. v. Medical Dental Surgeries, Co.*, 601 F.2d 1011, 1014 [ 202 USPQ 401 ] (9th Cir.1979); J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, Section 12:1 (4th Ed.1996). Because an indication of origin is the key to a non-generic mark, a general rule of thumb is that a generic mark answers the question "what are you," while a non-generic mark answers the question "who are you?" *Official Airline Guides*, 6 F.3d at 1391; McCarthy Section 12:1. For example, marks held to be generic include ASPIRIN,[5] COLA,[6] LIGHT BEER,[7] and SUPER GLUE.[8] Non-generic marks include COKE,[9] LEVIS,[10] POLAROID,[11] and TRIVIAL *1252 PURSUIT.[12]

The test for deciding whether a mark indicates a product's origin must be answered in regards to the understanding of the relevant consumer public. A court must make a critical inquiry: "What do the buyers understand by the word for whose use the parties are contending?" *Magic Wand, Inc. v. RDB, Inc.*, 940 F.2d 638, 640 [ 19 USPQ2d 1551 ] (Fed.Cir.1991) (quoting from *Bayer Co.*, 272 F. at 509); *The Committee for Idaho's High Desert, Inc. v. The Committee for Idaho's High Desert, Inc.*, 92 F.3d 814, 821 [ 39 USPQ2d 1705 ] (9th Cir.1996).

■ Genericness, i.e. what relevant consumers understand a mark to mean, is a question of fact. *In re Northland Aluminum Products, Inc.*, 777 F.2d 1556, 1559 [ 227 USPQ 961 ] (Fed.Cir.1985); McCarthy Section 12:12. Thus, a mark is not generic if the relevant public understands that the mark refers to the origin of the product. On the other hand, a mark is generic if the relevant public associates the mark with the genus of the product.

The relevant public in this case would be those consumers who are involved in the golf club bending machine market. The genus classification in this case is "golf club bending machines."[13] The question is whether the rel-

---

1641 ] (9th Cir.1993); J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, Section 12:1 (4th Ed.1996). However, for the sake of judicial economy this court will analyze the classification of "universal" under all three legal classifications.

**4.** Genus is "the broader, more inclusive classification, while species are groupings within a given genus." McCarthy, Section 12:33.

**5.** *Bayer Co. v. United Drug Co.*, 272 F. 505 (D.N.Y.1921).

**6.** *Dixi–Cola Laboratories, Inc. v. Coca–Cola Co.*, 117 F.2d 352 [ 48 USPQ 164 ] (4th Cir.1941), cert. denied, 314 U.S. 629, 62 S.Ct. 60, 86 L.Ed. 505 [ 51 USPQ 546 ] (1941).

**7.** *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75 [ 195 USPQ 281 ] (7th Cir.1977).

**8.** *Loctite Corp. v. National Starch & Chemical Corp.*, 516 F.Supp. 190 [ 211 USPQ 237 ] (S.D.N.Y.1981).

**9.** *Coca–Cola Co. v. Overland, Inc.*, 692 F.2d 1250 [ 216 USPQ 579 ] (9th Cir.1982).

**10.** *In re Arthur Holland, Inc.*, 192 U.S.P.Q. 494 (T.T.A.B.1976).

**11.** *Marks v. Polaroid Corp.*, 129 F.Supp. 243 [ 105 USPQ 10 ] (D.Mass.1955), aff'd. 237 F.2d 428 [ 111 USPQ 60 ] (1st Cir.1956), cert. denied, 352 U.S. 1005, 77 S.Ct. 564, 1 L.Ed.2d 550 [ 112 USPQ 494 ] (1957).

**12.** *Selchow & Righter Co. v. Decipher, Inc.*, 598 F.Supp. 1489 [ 225 USPQ 77 ] (E.D.Va.1984).

**13.** One accepted way to define genus is to determine the relevant product market. McCarthy Section 12:24. A relevant product market is one in which the commodities are "reasonably interchangeable by consumers for the same purposes." *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395, 76 S.Ct. 994, 1007, 100 L.Ed. 1264 (1956) (Setting forth the relevant product market test in an antitrust case). Golf club bending machines are presumably interchangeable for the same purpose, and are in competition for the same market. Thus, golf club bending machines constitute a relevant product market, and can therefore be defined as a genus.

evant public associates "universal" with RMI or with the genus of golf club bending machines. Neither party has produced strong evidence to prove how the relevant public views the term "universal." However, both Plaintiff's and Defendant's machines are advertised in several golf club journals.[14] The advertisements for Plaintiff's machine include the word "universal" in a large typeface and distinct type font as compared to the rest of the language in the ad (Doc. # 50, exhibit B). Thus, "universal" could well be associated with RMI by the relevant consumer public. Furthermore, Michael Keeney, the president of RMI, has testified that "numerous" customers have referred to RMI's machine as the "universal" machine (Doc. # 63, Keeney Declaration). This testimony supports the contention that the relevant public may associate "universal" with RMI. Defendant has introduced no evidence to prove how the relevant public defines "universal." Thus, the court finds that the evidence set forth by Plaintiff demonstrates that the public could arguably associate Plaintiff's "universal" machine with RMI, and thus find "universal" is not generic.[15]

It should be noted that "universal" is an adjective, as Plaintiff's machine is called the "Universal Loft & Lie Bending Machine."[16] Defendant argues that "universal" is generic as a matter of law because it describes a function of the golf club machine (Doc. # 50). It is true that adjectives can be generic when they do not directly name the product but rather name some important characteristic of a product. McCarthy, Section 12:10. By way of example, MATCHBOX was held generic for toy cars sold in matchbox sized packages. *J. Kohnstam, Ltd. v. Louis Marx & Co.*, 280 F.2d 437 [126 USPQ 362] (C.C.P.A.1960). Similarly, LIGHT BEER was held generic for beer light in flavor and low in calories. *Miller Brewing Co.*, 561 F.2d 75 [195 USPQ 281]. However, an adjective can be non-generic. *Henri's Food Products, Co. v. Tasty Snacks, Inc.*, 817 F.2d 1303 [2 USPQ2d 1856] (7th Cir.1987) (Holding that "Tasty Salad Dressing" is not a generic name). In any case, Plaintiff's reason for choosing a term is not relevant to a finding of genericness. Likewise, the classification of the term as an adjective or noun is not determinative. Rather, the critical inquiry is how the public perceives the mark. *The Committee for Idaho's High Desert*, 92 F.3d at 821.

■ Viewing the evidence in a light favorable to the non-moving party, the court finds *1253 that there are material questions of fact as to whether "universal" is generic, and that these questions could allow a reasonable jury to find "universal" non-generic. Therefore, "universal" is not generic as a matter of law.

b. Descriptive Marks

■ Descriptive marks may or may not qualify for trademark protection. A descriptive mark describes the product or service, but does not indicate its origin and thus is not ordinarily entitled to protection. *Two Pesos*, 505 U.S. at 769, 112 S.Ct. at 2757; *Official Airline Guides*, 6 F.3d at 1391. However, a descriptive mark can receive protection if it has become distinctive through a secondary meaning. *Id.* "Secondary meaning has been defined as association [between name and source], nothing more." *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1015 [227 USPQ 598] (9th Cir. 1985), cert. denied, 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986) (quoting *Carter–Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 802 [167 USPQ 713] (9th Cir.1970)). Secondary meaning is a question of fact. *Id.* (citing to *American Scientific Chemical, Inc.*

---

**14.** Plaintiff's machine has appeared with a "universal" designation in several trade shows, the Professional Clubmakers Journal, Golf Week, Golf Product News, Tee Shot, the Yellow Pages of Golf; the Dynacraft catalog, and the Internet. (Doc. # 63, Keeney Declaration).

**15.** Plaintiff has introduced evidence of "universal" as trademarked in other contexts, arguing that this evidence supports their argument that "universal" is not generic. However, this evidence is irrelevant as it does not tend to demonstrate the relevant public's understanding of "universal" in the context of golf club bending machines.

**16.** RMI's response to interrogatory # 11 states "the universal name was selected because RMI's machine can be used with golf club irons, putters, and woods, and therefore, has multiple applications." (Doc. # 50, exhibit C).

*v. American Hospital Supply Corp.*, 690 F.2d 791,792 [ 216 USPQ 1080 ] (9th Cir.1982)); McCarthy Section 15:29.

Plaintiff has alleged that even if "universal" is deemed descriptive, secondary meaning can be proven (Doc. # 63). However, for the same reasons as set forth in section (a) above, the evidence put forth by the parties is insufficient to conclusively establish whether "universal" has gained a secondary meaning in the minds of the relevant public. Material questions of fact remain as to the relevant public's perception of the secondary meaning of "universal." Therefore, because there exist questions of material fact regarding secondary meaning, and because a reasonable jury could find a secondary meaning, "universal" is not protected as a descriptive mark as a matter of law.

### c. Suggestive Marks

Suggestive marks do not directly describe a product. McCarthy, Section 11:62. Rather, the mark "subtly connote [s] something about the product," *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 349 [204 USPQ 808] (9th Cir.1979), and therefore "require [s] imagination to make a connection between the mark and an attribute of the product." *Official Airline Guides*, 6 F.3d at 1391. Because suggestive marks are inherently distinctive, they do not require proof of secondary meaning. McCarthy, Section 11:62; *Sleekcraft*, 599 F.2d at 349. Some examples of marks held suggestive are COPPERTONE,[17] PLAYBOY,[18] QTIPS,[19] and 7–ELEVEN.[20]

Because suggestive and descriptive marks are closely related, the courts have developed several well recognized tests to aid in distinguishing the two. The three main tests are the "imagination test," the "competitors' need test," and the "competitors' use test." McCarthy, Section 11:66–69.

■ Under the "imagination test," a mark can be suggestive "if a consumer must use more than a small amount of imagination to make the association, [between the mark and the product]." *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1218 [ 2 USPQ2d 1204 ] (9th Cir.1987) (citing *Golden Door, Inc. v. Odisho*, 646 F.2d 347, 350 [ 208 USPQ 638 ] (9th Cir.1980)).

■ As discussed earlier, this court has no evidence on how relevant consumers perceive "universal." Likewise, there is no evidence on the amount of imagination a consumer must use to associate "universal" with RMI's machine. Thus, there exist questions of material fact as to whether "universal" is suggestive under the "imagination" test.

■ The "competitors' need test" measures the extent to which a mark is necessary for competitors to identify their products or services. *Rodeo Collection*, 812 F.2d at 1218. If the "message conveyed by the mark . . . . is so direct and clear that competing sellers would be likely to use the term in describing or advertising their goods, then this indicates that the mark is descriptive."(*Id.* quoting McCarthy, Section 11:68).

Defendant, who is the competitor in this analysis, has been using the word "universal" since approximately May of 1995 (Doc. # 31). Plaintiff has been using "universal" since approximately December of 1995 (Doc. # 31). Because Defendant was using "universal" before Plaintiff, this suggests that competitors would be "likely to use the term in describing or advertising their goods." Therefore, "universal" is presumptively descriptive under the "competitors' need test." As stated in section (b), the *1254 classification of "universal" as a descriptive mark is a question of fact for trial.

■ The "competitors' use test" measures the extent which other competitors have used the name to describe similar products. " [I]f others are using the term to describe their products, an inference of de-

17. *Douglas Laboratories Corp. v. Copper Tan, Inc.*, 210 F.2d 453 [ 100 USPQ 237 ] (2d Cir. 1954), cert. denied, 347 U.S. 968, 74 S.Ct. 779, 98 L.Ed. 1109 [ 101 USPQ 505 ] (1954).

18. *Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc.*, 486 F.Supp. 414 [ 206 USPQ 70 ] (S.D.N.Y.1980).

19. *Q–Tips, Inc. v. Johnson & Johnson*, 206 F.2d 144 [ 98 USPQ 86 ] (3d Cir.1953), cert. denied, 346 U.S. 867, 74 S.Ct. 106, 98 L.Ed. 377 [ 99 USPQ 491 ] (1953).

20. *Southland Corp. v. Schubert*, 297 F.Supp. 477 [ 160 USPQ 375 ] (C.D.Cal.1968).

scriptiveness can be drawn." McCarthy, Section 11:69.

Defendant uses the term "universal standard" to describe the ability of their machine to bend golf clubs. Plaintiff uses "universal" for the same reason (Doc. 50, exhibit C). Furthermore, Defendant was using "universal" before Plaintiff. For these reasons, "universal" is presumed to be descriptive under the "competitors' use test." As stated in section (b), the classification of "universal" as a descriptive mark is a question of fact for trial.

In conclusion, under any of these tests, "universal" is not suggestive as a matter of law. If anything, "universal" is descriptive, and thus requires proof of secondary meaning, which is a question of material fact for trial.

### 2. Likelihood of Confusion

■ The second requirement in a trademark infringement claim is a "likelihood of confusion in the minds of the relevant consuming public." *Committee for Idaho's High Desert*, 881 F.Supp. at 1471; 15 U.S.C. Section 1125(a)(1)(A). Likelihood of confusion means consumers "are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques." *Metro Publishing, Ltd. v. San Jose Mercury News*, 987 F.2d 637, 640 [ 25 USPQ2d 2049 ] (9th Cir. 1993) (quoting *Nutri/System*, 809 F.2d at 604).

■ The Ninth Circuit has identified eight factors to evaluate the likelihood of confusion:

1. Strength of the allegedly infringed mark;

2. Proximity or relatedness of the goods;

3. Similarity of the sight, sound, and meaning of the marks;

4. Evidence of actual confusion;

5. Degree to which the marketing channels converge;

6. Type of goods and degree of care consumers are likely to exercise in purchasing them;

7. Intent of the Defendant in selecting the allegedly infringing mark;

8. Likelihood that the parties will expand their product lines.

*Sleekcraft*, 599 F.2d at 348–349; *Official Airline Guides*, 6 F.3d at 1391. These factors are nonexclusive, and are intended to be "helpful in making the ultimate factual determination of likelihood of confusion." *Official Airline Guides*, 6 F.3d at 1391; *Eclipse Assocs. Ltd. v. Data General Co.*, 894 F.2d 1114, 1118 [ 13 USPQ2d 1885 ] (9th Cir.1990).

The evidence before the court suggests that although factors 2, 3, and 5 could be found by a reasonable jury to establish a likelihood of confusion, the other factors involve factual inquires which can only be explored at trial.

In sum, because there exist questions of material fact about the likelihood of confusion in the minds of the relevant consuming public, Defendant's summary judgment motion should be denied.

### III. CONCLUSION

Because there exist questions of material fact regarding the validity of "universal" as a trademark as either generic, descriptive, or suggestive; because there exist questions of material fact regarding the likelihood of confusion among relevant consumers; and because a reasonable jury could find trademark infringement under 15 U.S.C. Section 1125(a), Defendant's motion for summary judgment should be denied.

### RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Court enter its Order DENYING the Defendant's motion for summary judgment (Doc. # 50).

July 23, 1997.

This Report and Recommendation is made to the Honorable Edward C. Reed, Jr., United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. Section 636(b)(1)(B) and the Local Rules of Practice, LR IB 1–4.

This matter is before the court on Plaintiff's (hereafter "RMI") motion for summary judgment on the issue of patent infringe-

ment. (Doc. # 55). Defendant (hereafter "Mitchell") has opposed the motion (Doc. # 64), RMI has replied to the opposition (Doc. # 71), Mitchell has filed a supplemental brief in support of their opposition (Doc. # 80), and RMI has replied to the supplemental brief. (Doc. # 82).

## I. BACKGROUND

This case is a patent dispute. Both parties deal in golf club bending machines. On January 26, 1996, RMI filed this declaratory judgment action against Mitchell. (Docs. # 1 & 31). RMI seeks relief in the form of a judgment that RMI's golf club bending machine does not infringe on Mitchell's patented golf club bending machine, or, in the alternative, that Mitchell's patents be adjudged invalid. RMI also requests that Mitchell be enjoined from threatening, filing, or maintaining any suit for infringement of Mitchell's patents. Mitchell has counterclaimed alleging patent infringement by RMI. Mitchell seeks relief in the form of an injunction against RMI's infringement of Mitchell's patents, money damages, and attorney fees. (Docs. # 28 & # 32)

## II. DISCUSSION

### Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which the moving party believes indicates the absence of a genuine issue of material fact. Fed. R. Civ.P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has met its initial responsibility, the burden shifts to the opposing party to establish that a genuine issue as to any material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Additionally, the nonmoving party must show that the dispute is genuine, i.e., that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively; only that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Association*, 809 F.2d 626, 630 (9th Cir.1987).

In determining whether to grant or deny the motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, if any. Fed.R.Civ.P. 56(c). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513; *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam)). However, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts ... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356 (citation omitted).

### Patent Infringement

▆▆▆ A determination of patent infringement takes place in two steps. First, it is necessary to determine the meaning and scope of the patent claim alleged to be infringed. *SmithKline Diagnostics v. Helena Lab. Corp.*, 859 F.2d 878, 889 [ 8 USPQ2d 1468 ] (Fed.Cir.1988). This determination is a question of law. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S.Ct. 1384, 1393–95, 134 L.Ed.2d 577 [ 38 USPQ2d

1461 ] (1996). The second step, determination of whether the claim as interpreted covers the alleged infringer's product, is a question of fact for a jury. *Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics*, 976 F.2d 1559, 1570 [ 24 USPQ2d 1321 ] (Fed.Cir.1992); see also *Markman*, 116 S.Ct. at 1392 and *Warner—Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 117 S.Ct. 1040, 1053, 137 L.Ed.2d 146 [ 41 USPQ2d 1865 ] (1997). Infringement of one claim means the entire patent is infringed. *Intervet America v. Kee–Vet Laboratories*, 887 F.2d 1050, 1055 [ 12 USPQ2d 1474 ] (Fed.Cir.1989). To establish infringement, all of the patented claims' elements must be found in the alleged infringer's product, either literally or by a substantial equivalent. *Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 935 [ 4 USPQ2d 1737 ] (Fed. Cir.1987) (in *1256 banc), cert. denied, 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988); *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577 [ 12 USPQ2d 1382 ] (Fed.Cir. 1989).

 The owner of the patent always has the burden to prove infringement. *Under Sea Industries, Inc. v. Dacor Corp.*, 833 F.2d 1551, 1557 [ 4 USPQ2d 1772 ] (Fed.Cir.1987). Although Mitchell owns the patent, RMI is the movant for summary judgment. RMI thus has the initial burden to show the absence of any material facts. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. If RMI satisfies this burden, Mitchell then has the burden to show that an issue of material fact exists, as well as to show that a reasonable jury could find infringement. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

Because neither party has made an issue of claim interpretation, the court will focus its attention on whether there exists an issue of material fact sufficient to allow a jury to decide the issue of patent infringement. If an issue of material fact exists, and Mitchell can show that a reasonable jury could find infringement, RMI's summary judgment motion must be denied.

This dispute concerns two patents owned by Mitchell. Patent 4,620,431 (hereafter the '431 patent) is for a "golf club straightening device." Patent 5,421,098 (hereafter the '098 patent) is for an "apparatus for adjusting golf club loft and lie." Each will be analyzed separately to determine whether a question of material fact exists, and if so, whether Mitchell has proved that a jury could find infringement.

The '431 Patent

RMI argues that they do not infringe on the '431 patent either literally or under the doctrine of equivalents. (Doc. # 55). Mitchell argues that RMI's machine infringes claim 1 of the '431 patent under the doctrine of equivalents. (Doc. # 64). Because Mitchell has the burden to show infringement, only the issue of infringement under the doctrine of equivalents will be addressed.[21]

 The doctrine of equivalents provides that a product that does not literally infringe upon a patent "may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner–Jenkinson Co., Inc.*, 117 S.Ct. at 1045, citing to *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 609, 70 S.Ct. 854, 856–857, 94 L.Ed. 1097 [ 85 USPQ 328 ] (1950). Equivalence means "substantially the same overall function or work, in substantially the same way, to obtain substantially the same overall result as the claimed invention." *Pennwalt Corp.*, 833 F.2d at 934. The doctrine of equivalents must be applied to each individual element of a claim, and not to the invention as a whole. *Warner–Jenkinson Co.*, 117 S.Ct. at 1049. Equivalence is a question of fact. *Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d at 1570; *Hilton Davis Chemical Co. v. Warner–Jenkinson Co., Inc.*, 62 F.3d 1512, 1522 [ 35 USPQ2d 1641 ] (Fed.Cir.1995), rev'd on

**21.** Although Mitchell does not argue literal infringement, the court notes that this argument would apparently be without merit as the RMI machine does not literally read on the elements of claim 1 of the '431 patent. In any case, since Mitchell has not set forth arguments in support of literal infringement, they have not satisfied their burden in opposition to a summary judgment motion. Thus, summary judgment for RMI would be proper for non-infringement of the '431 patent under a theory of literal infringement.

other grounds, 117 S.Ct. 1040 [ 41 USPQ2d 1865 ].

■ Claim 1 of the '431 patent is as follows: [22]

1. Improvement in a golf club straightening device for straightening golf club irons, said device having a base, means for examining the loft of the golf club iron, and means for examining the lie of the golf club iron, said improvement comprising:

(a) an arcuate [23] loft arm mounted stationary in respect to the base and upstanding therefrom,

(b) a swingarm mechanism comprising a pivot support stationary in respect to the base and upstanding therefrom and including a bifurcated swingarm pivotally mounted on said pivot support,

(c) upper and lower clamp means movably carried on said bifurcated swingarm for clamping the head of a golf club iron so that the front face thereof is flat against the rear face of said bifurcated swingarm,

(d) said swingarm being pivotally moveable in respect to the said arcuate loft arm and being capable of being made fast in respect thereto by being clamped thereagainst,

(e) said arcuate loft arm having an angular scale thereon for determining the loft of said golf club.

RMI claims that their machine is different from claim 1 of the '431 patent with respect to three elements. (Doc. # 71). Element (a) of the '431 patent requires an "arcuate loft arm" to measure loft, which is absent on the RMI machine. Furthermore, the "arcuate loft arm" is required to be "mounted stationary" to the base of the machine. In contrast, RMI's machine uses a threaded rod to measure loft, which is not mounted stationary. Element (d) of the '431 patent requires the

"arcuate loft arm" to be "clamped." RMI argues the threaded rod on their machine is not clamped. Element (e) of the '431 patent requires an "angular scale" on the "arcuate loft arm" to measure the loft angle. RMI argues that their scale is much more sophisticated and does not function in the same manner as the '431 "angular scale."

By making these arguments, RMI has satisfied their initial burden as a movant for summary judgment, to indicate the absence of a material fact. The burden now shifts to Mitchell to show the existence of a question of material fact which would preclude summary judgment, and to show that a reasonable jury could find infringement.

Mitchell has provided expert testimony, by way of affidavit, stating that each element, or its equivalent, of claim 1 of the '431 patent can be found in RMI's machine. (Doc. # 80). In particular, this court finds the expert opinion of John Benefiel (Doc. # 78, exhibit D) sufficient to establish a question of material fact with respect to claim 1 of the '431 patent. John Ford, Mitchell's other expert, also lends support to Mr. Benefiel's opinion [24]

Mr. Benefiel, after analyzing each element, states that any differences between RMI's machine and claim 1 of the '431 patent are insubstantial and do not have a material affect on the function of each element. (Doc. # 78, exhibit D). Mr. Benefiel states that the RMI machine, although it uses a threaded rod rather than an arcuate loft arm, measures loft in an arcuate path substantially similar to element (a) of the '431 patent. Mr. Benefiel finds element (d) substantially similar to the connection nut on the swingarm of the RMI machine. Also, element (e), the angular scale, has a substantial equivalent to measure loft on the RMI machine.

---

**22.** The element designation is from RMI's Motion for Summary Judgment, and is not found on the actual patent claim. (Doc. # 55). However, for ease of analysis, this court will use the same alphabetic element designation.

**23.** Arcuate is defined as "curved like a bow." Webster's II New College Dictionary 59 (1995).

**24.** RMI argues that Mr. Ford, another of Mitchell's experts, should not be allowed to testify as

an expert. The court does not have sufficient material before it to decide whether Mr. Ford qualifies as an expert under either Fed.R.Civ.P. 702 or *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, (9th Cir.1995). Thus, at this time, the court offers no opinion on Mr. Ford's qualifications as an expert.

RMI argues that Mr. Benefiel's testimony does not create an issue of material fact. (Doc. # 82). RMI states there are four major differences between their machine and the '431 machine which Mr. Benefiel has not sufficiently addressed: (1) the absence of an "arcuate loft arm" on the RMI machine, (2) the inability of the' swingarm to move independently on the RMI machine, (3) the presence of two moving parts on the RMI machine compared to one on the Mitchell machine, and (4) the absence of a clamping mechanism on the RMI machine.

After consideration of both RMI and Mitchell's arguments and expert testimony, this court finds that differences between the RMI machine and the '431 machine are not substantial enough to remove them from the scope of the doctrine of equivalents. There is a question of material fact as to whether the RMI machine performs "substantially the same overall function or work, in substantially the same way, to obtain substantially the same overall result" as the '431 machine. *Pennwalt Corp.*, 833 F.2d at 934. This question of fact is best determined at trail.

Therefore, because Mitchell has proved the existence of an issue of material fact, and because a reasonable jury could find infringement, RMI's motion for summary judgment should be denied with respect to the '431 patent.

The '098 Patent

RMI argues that their machine does not infringe on the '098 patent either literally or under the doctrine of equivalents. (Doc. # 55). Mitchell argues that claim 29 of the '098 patent is literally infringed, or there is at least a material issue of fact as to the measurement capability of the accused product. (Doc. # 64). Because Mitchell has the burden to prove infringement, only the literal infringement issue will be discussed.[25]

Literal infringement occurs "when the accused product or process (a) employs means identical to the means disclosed in the patent's specifications to per-form the identical function of the claim element or (b) employs a means that is the structural equivalent of the means disclosed in the patent's specification to perform the identical function of the claim element." Herbert F. Schwartz, Patent Law and Practice, 81 (2d ed., 1995), citing to *Valmont Industries, Inc. v. Reinke Mfg. Co., Inc.*, 983 F.2d 1039, 1042 [ 25 USPQ2d 1451 ] (Fed.Cir. 1993). Literal infringement is a question of fact. *Texas Instruments v. United States Int'l Trade Comm'n*, 988 F.2d 1165, 1172 [ 26 USPQ2d 1018 ] (Fed.Cir.1993). However, "the motion of an accused infringer for judgment on the ground of non-infringement of a patent may be granted where the patentee's proof is deficient in meeting an essential part of the legal standard for infringement." *Johnston*, 885 F.2d at 1577. In the case at bar, the court finds that there are no issues of material fact, and that Mitchell has failed to prove the legal standard of literal infringement.

Claim 29 of the '098 patent is as follows:

29. A device for determining the lie and loft angles of a golf club, said device comprising:

a base;

a bracket means for measuring the loft and lie of a golf club, said bracket means being movably attached to said base;

wherein the shaft of said golf club rests against said bracket means;

a lie measuring assembly;

said lie measuring assembly being slidably attached to said bracket means, said lie measuring assembly having a right-handed club measuring portion and a left handed club measuring portion, said lie measuring assembly being removable from said bracket means and being reversible from a right handed club measuring position to left handed club measuring position.

Mitchell argues that the affidavit of L. Edward Mitchell establishes literal infringe-

---

**25.** Mitchell has neither alleged nor provided facts in support of a theory of infringement under the doctrine of equivalents. Mitchell has thus failed to satisfy their burden in opposition to a summary judgment motion. Thus, summary judgment for RMI is proper for non-infringement of the '098 patent under the doctrine of equivalents. Additionally, any argument by Mitchell under the doctrine of equivalents would possibly be barred under the rule of prosecution history estoppel as set forth in *Warner Jenkinson Co., Inc.*, 117 S.Ct. at 1051.

**1314**

ment of each element of claim 29. (Doc. # 64, exhibit A). This affidavit has been introduced as expert testimony, (Doc. # 78, exhibit F), and is the only evidence Mitchell has introduced to support an infringement theory on the '098 patent. Mitchell argues that the bracket mechanism on the RMI machine performs the same function as the bracket in the '098 patent, i.e. measurement of the loft and lie of a golf club. Mitchell also argues there is a material issue of fact as to whether the RMI bracket can measure both loft and lie. (Doc. # 64).

RMI argues that their bracket does not measure both loft and lie, rather there exists two mechanisms, one for measurement of loft and one for measurement of lie. (Doc. # 71). RMI argues that this partial infringement is legally insufficient for literal infringement, and that there is no material fact in dispute. The court finds that RMI prevails on this issue.

Mitchell's affidavit admits that there are two different mechanisms to measure loft and lie on the RMI machine. (Doc. # 78, exhibit F. Para.14–15). Furthermore, Mitchell has admitted in deposition that the two mechanisms on the RMI machine are not attached. (Doc. # 56, Mitchell Deposition, p. 249: 8–17). The '098 machine has one bracket to measure both loft and lie. Thus, there is no material factual dispute concerning the '098 patent, or the method by which the RMI machine measures loft and lie. Rather, the inquiry is whether a machine with one bracket to measure both loft and lie is literally infringed by a machine with two separate mechanisms, one for loft and one for lie.

 A claim for literal infringement always requires the accused product to perform the identical function as the patented claim. *Valmont Industries*, 983 F.2d at 1042. In the case at bar, the bracket on the RMI machine and the bracket on the '098 machine do not perform identical functions. The RMI bracket measures loft, there is a separate mechanism to measure lie. The '098 claim covers a bracket that measures both loft and lie. Because the RMI bracket does not perform the identical function of the '098 bracket, there is no literal infringement.

In conclusion, this court finds that Mitchell has failed to prove either literal infringe-

ment, or the existence of a material fact under the '098 patent. Thus, summary judgment is proper for RMI for non-infringement of the '098 patent.

## RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Court enter its order DENYING the Plaintiff's summary judgment motion for non-infringement of patent 4,620,-431, and GRANTING the Plaintiff's summary judgment motion for non-infringement of patent 5,421,098.